**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| PRO REO SETTLEMENT SERVICES, LLC and KEVIN RA,<br><br>*Plaintiffs*,<br><br>v.<br><br>LENDING TREE, INC., HEADWAY CAPITAL, LLC, SUTTON FUNDING NY, INC., and PREMIUM MERCHANT FUNDING ONE, LLC,<br><br>*Defendants*. | Case No.: 1:25-cv-00335-JPC<br><br>Judge J. Philip Calabrese<br><br>Magistrate Judge<br>James E. Grimes, Jr. |

**LENDINGTREE, INC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND MOTION TO TRANSFER VENUE**

Defendant LendingTree, Inc. ("LendingTree"),[1] hereby submits this Reply Memorandum of Law in Support of its Motion to Dismiss and Motion to Transfer Venue.

## I. INTRODUCTION

In their consolidated Brief in Opposition to Defendant LendingTree's Motion to Dismiss or Transfer Venue, ECF No. 27,[2] Plaintiffs Pro REO Settlement Services, LLC and Kevin Ra

[1] As noted in Defendant's Motion to Dismiss, Motion to Compel Arbitration, and Motion to Transfer Venue, ECF Nos. 14, 15, 16, LendingTree, LLC is a subsidiary of LendingTree, Inc. Unless otherwise noted, these entities are referred to collectively as "LendingTree."

[2] On March 18, 2025, LendingTree filed the following three motions: a Motion to Dismiss Plaintiffs' Complaint for failure to state a claim, a Motion to Compel Arbitration, and a Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). ECF Nos. 14, 15, 16. On April 3, 2025, Plaintiffs moved for an extension of time until April 15, 2023, to respond to the above motions, ECF No. 22, which this Court granted in a text order on the same day. On April 15, 2025, Plaintiffs then filed their "Brief in Opposition to Defendant LendingTree's Motion to Dismiss or Transfer Venue." ECF No. 27. Plaintiffs did not file any response to LendingTree's Motion to Compel Arbitration.

Based upon their filing of a consolidated response to LendingTree's discrete motions to Transfer Venue and Dismiss, respectively—which they characterize as a "Motion to Dismiss *or* Transfer Venue," ECF No. 27 at 1

(collectively "Plaintiffs") fail to meaningfully engage with *any* arguments raised by LendingTree in either its Motion to Dismiss or Motion to Transfer Venue, ECF Nos. 14, 16.

First, Plaintiffs fail to respond to or address any arguments raised in LendingTree's Motion to Dismiss, thus waiving or forfeiting any opposition to dismissal of each of their federal and state claims. Rather, Plaintiffs' Brief focuses exclusively on LendingTree's Motion to Transfer Venue. Dismissal of Plaintiffs' Complaint is warranted on this basis alone.

Second, Plaintiffs fail to contest the validity or enforceability of the forum selection clause contained in LendingTree's Terms of Use Agreement ("Terms of Use"), to which Plaintiff Kevin Ra expressly assented by creating a LendingTree customer account and submitting a loan request form through the company's website. As noted in LendingTree's Memorandum of Law in Support of its Motion to Transfer, ECF No. 16-1, that clause both (a) provides that any disputes arising out of or related to this Agreement or the Websites, Services, or Content, are to be governed by the laws of the State of North Carolina, and (b) states that "if any matter proceeds in court, including post-arbitration confirmation proceedings," a user "agree[s ]to the exclusive personal jurisdiction

---

(emphasis added)—Plaintiffs may be operating on the assumption that a Motion to Transfer is dispositive for the purposes of the briefing schedule set forth in Local Rule 7.1(e). As the Southern District of Ohio has noted, "[t]here is no controlling Sixth Circuit precedent on whether [a] motion to change venue presents a dispositive matter and the district courts in this Circuit are without consensus." *Down-lite Int'l, Inc. v. Altbaier*, No. 1:19CV627, 2019 WL 3562068, at *1 n.1 (S.D. Ohio Aug. 6, 2019) (collecting cases reflecting an intra-circuit split on the issue), *review denied, decision aff'd*, No. 1:19-CV-627, 2019 WL 4439099 (S.D. Ohio Sept. 17, 2019); *Dehuga v. RealState Invs., LLC*, No. 1:20-CV-124, 2021 WL 794140, at *2 n.2 (S.D. Ohio Mar. 2, 2021) (same); *compare City of Columbus v. Hotels.com, L.P.*, No. 2:06 CV 677, 2007 U.S. Dist. LEXIS 49775, 2007 WL 2029036, at *3 (S.D. Ohio July 10, 2007) ("Because a motion to transfer venue is not a dispositive motion, Magistrate Judge Abel's recommended disposition of the motion is not subject to *de novo* review."), *and Jaiyeola v. Bryan*, No. 1:22-CV-844, 2022 WL 20472175, at *2 (W.D. Mich. Oct. 31, 2022) ("Because a motion to transfer venue is not dispositive, the undersigned properly resolved such by motion rather than Report and Recommendation."), *with Collins v. Synthes USA Sales, LLC*, No. 1:09 CV 2868, 2010 U.S. Dist. LEXIS 32768, 2010 WL 1408966, at *1, 3 (N.D. Ohio Apr. 2, 2010) (treating motion to transfer venue, which it had referred to magistrate judge for report and recommendation, as a dispositive matter), *and Payton v. Saginaw Cnty. Jail,* 743 F. Supp. 2d 691, 693 (E.D. Mich. 2010) (vacating magistrate judge's order granting defendant's motion to transfer venue because the magistrate judge "did not have the authority to enter" an order on a dispositive matter).

Given Plaintiffs' consolidated response and the lack of controlling Sixth Circuit precedent on whether a motion to transfer venue is a dispositive matter, LendingTree has adhered to the 14-day briefing schedule for dispositive motions in filing this Reply.

by, and venue in, the state and federal courts located in Mecklenburg County, North Carolina, and waive[s] any objection to such jurisdiction or venue." Declaration of Mark Gleason in Support of LendingTree's Motion to Compel Arbitration ("Gleason Decl."), Exh. C at 5, ECF No. 15-1 (unnecessary capitalization deleted).

In their opposition, Plaintiffs do not dispute that their claims arise out of and relate to their use of LendingTree's websites, content, or services and thus fall within the scope of the mandatory, valid, and enforceable forum selection clause contained in that agreement. Furthermore, Plaintiffs cite no legal authority for their baseless contention that a mere threat to pursue litigation has any effect upon the parties' agreed and exclusive venue for this dispute pursuant to a valid forum selection clause, or that LendingTree's alleged failure to acquiesce in Plaintiff Ra's demands nearly a year before this action was commenced could somehow constitute waiver. Moreover, LendingTree has not taken any actions leading up to or during this action that are inconsistent with the forum selection clause, precluding any finding of waiver.

Accordingly, pursuant to the mandatory, valid, and enforceable forum selection clause contained in the Terms of Use, LendingTree respectfully requests that this Court transfer the above-entitled action to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a).

## II. ARGUMENT

In their largely vacuous, three-page, consolidated response to LendingTree's discrete motions to Transfer Venue and Dismiss, respectively—which they characterize as a "Motion to Dismiss *or* Transfer Venue," ECF No. 27 at 1 (emphasis added)—Plaintiffs fail to meaningfully engage with *any* arguments raised by LendingTree in either filing. *See generally id.*[3] Rather, the

[3] As an initial matter, Plaintiffs bizarrely maintain, for the first time in this litigation, that "[t]his case arises from LendingTree's failure to address critical issues relating to *missing bank statements* and other irregularities as outlined in Plaintiffs' forthcoming complaint." ECF No. 27 at 1 (emphasis added). Neither the substance of their Brief, nor any of the email correspondence reproduced in Exhibit A—most of which amounts to a perfunctory chronicle of

essence of their argument is that, on February 1, 2023, in an email from Plaintiff Kevin Ra to LendingTree representative Sara Heath, "Plaintiffs provided LendingTree with timely and sufficient notice of the intent to commence litigation," but that LendingTree "failed to take any responsive action" to rectify "multiple unresolved issues" (which are undefined in the Brief), "thereby waiving any objection to venue." ECF No. 27 at 1, 2; *see also id.*, Exh. A at 6 (February 1, 2023, email from Plaintiff Ra to Sarah Heath, Senior Account Executive for Renewals, SnapCap). As ostensible evidentiary support for this proposition, in Exhibit A, Plaintiffs reproduce Plaintiff Ra's email correspondence with LendingTree personnel, spanning from January 2022 through March 2023.[4]

In the relevant February 2023 email, Plaintiff Ra requests that Ms. Heath "send over the agreement" which, Plaintiff maintains, he and LendingTree "agreed to as it relates to your company selling our data to third parties," and demands that LendingTree remove Plaintiffs "from your data partners' call lists . . . ASAP." *Id.* Plaintiff Ra further asserts that "[w]e have begun the process of recording these calls and creat[ing] a spreadsheet to keep the data in the event we have to escalate this matter to legal action." *Id.* Below is a screenshot of the relevant email from Exhibit A:

Plaintiff Ra's exchanges with LendingTree representatives in attempting to secure a business loan—in any way elaborates upon or corroborates this (mis)characterization of the instant dispute. *See* generally *id.*, Exh. A.

[4] The email correspondence reproduced on pages 20 to 32 of Exhibit A is duplicative of that appearing on pages 6 to 18. *Compare* ECF No. 27, Exh. A at 6–18, *with id.* at 20–32.

---------- Forwarded message ---------
From: **Rubymay Nery** <prcstaff.vir.001@parcelrevenue.com>
Date: Wed, Feb 1, 2023 at 10:52 AM
Subject: Re: LendingTree - Missing Bank Statements
To: Kevin R. <kevin@parcelrevenue.com>

Noted on this Sir

On Wed, Feb 1, 2023 at 5:27 AM Kevin R. <kevin@parcelrevenue.com> wrote:

> Sara please send over the agreement that we agreed to as it relates to your company selling our data to third parties. The number of calls we receive daily has gotten to the point where our responsibly shared.
>
> WHATEVER your company needs to do to have us removed from your data partners' call lists needs to be done ASAP.
>
> And I mean ASAP.
>
> We have begun the process of recording these calls and created a spreadsheet to keep the data in the event we have to escalate this matter via legal action.
>
> Ruby:
>
> Follow up on this every five business days until the matter is resolved.
>
> ______________________________
>
> Mr. Kevin Ra, Chairman
> 3401 Enterprise Parkway Suite 340-435
> Beachwood, OH 44122
> P: 216.584.6256
> F: 216.910.6220
> W: http://www.parcelrevenue.com

*Id.*

According to Plaintiffs, the above email somehow "satisfies [the] legal requirements for pre-suit notice" and "serve[d] as effective notice[] of [the] commencement" of litigation because, Plaintiffs aver, "it was a demand for immediate rectification and a declaration that legal proceedings would follow upon noncompliance." ECF No. 27 at 2. Plaintiffs further insist that the "email created an opportunity for LendingTree to respond, resolve, or initiate a competing forum selection," and that the company's "failure to do so operates as a waiver." *Id.*

Finally, Plaintiffs maintain that venue is proper in the Northern District of Ohio under 28 U.S.C. § 1391(b)(2) "because a substantial part of the events or omissions giving rise to the claims occurred here"; "Plaintiffs' operations and records are located" in this District; and "the harm resulting from Lending Tree's [alleged] failure to provide essential documentation was experienced here." *Id.* at 3. Plaintiffs further allege that "the February 1, 2023[,] notice was sent from this District and thus ties the forum to the acts giving rise to this litigation." *Id.* Plaintiffs assert that their "choice of forum is appropriate and should be honored." ECF No. 27 at 3.

**A. Plaintiffs have failed to respond to LendingTree's arguments propounded in its Motion to Dismiss, thereby forfeiting any opposition to dismissal of their claims.**

Plaintiffs have failed to respond in their opposition brief to *any* arguments propounded in LendingTree's Motion to Dismiss, thereby waiving or forfeiting any opposition to dismissal of their claims. *See Doe 1 v. Cleveland Metro. Sch. Dist. Bd. of Educ.*, 533 F. Supp. 3d 567, 575 (N.D. Ohio 2021) (Calabrese, J.) ("'By failing to respond to defendant's arguments, plaintiff has waived his opposition to dismissal of the claim.'" (quoting *Durham v. Niffenegger*, No. 1:18-cv-0091, 2019 WL 1050018, at *8, 2019 U.S. Dist. LEXIS 35034, at *23–24 (S.D. Ohio Mar. 5, 2019) (citations omitted)); *Cox v. Bank of Am.*, No. 1:23-CV-01977, 2025 WL 638905, at *3 (N.D. Ohio Feb. 27, 2025) (noting that "[a] plaintiff's failure to respond to a motion to dismiss 'amounts to a forfeiture of' the claims to which the motion is addressed"; observing that "Plaintiff's 'answer in response to' the motion to dismiss fails to address Defendant's arguments' merits . . . which amounts to a failure to respond" (citations omitted)); *see also Mun. Servs. of Am. Corp v. Sak*, No. 1:22-CV-2037, 2023 WL 6958639, at *7 (N.D. Ohio Oct. 20, 2023) ("When a party fails to respond to an argument in a motion to dismiss, the Court assumes that the party has conceded that point and abandoned the claim."); *Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 Fed. App'x 567, 569 (6th Cir. 2013) (plaintiff's failure to respond to an argument raised in a motion to dismiss "amounts to a forfeiture" of the claim); *KSA Enters., Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 463 (6th Cir. 2019) ("A party's failure to respond to an argument raised in a motion to dismiss results in the forfeiture of that argument.").

Dismissal of their federal and state claims *in toto* is warranted on this basis alone. *E.g.*, *Notredan*, 531 Fed. Appx. at 569; *Russell v. Henry*, No. 3:24-CV-256, 2025 WL 696785, at *3 (N.D. Ohio Mar. 4, 2025) (granting defendant's motion to dismiss where plaintiff "failed to respond to [d]efendants' Rule 12(b)(6) arguments").

**B. Plaintiffs' arguments in opposing LendingTree's Motion to Transfer Venue are legally and factually unsupported and fail to show why this is an exceptional case where the Court should decline to enforce a mandatory, valid, and enforceable forum selection clause.**

**1. Plaintiffs fail to contest the applicability and enforceability of the forum selection clause contained in LendingTree's Terms of Use.**

Plaintiffs' arguments in opposition to LendingTree's Motion to Transfer Venue are legally and factually unsupported and thus must be summarily rejected. First, in their three-page brief, Plaintiffs utterly fail to dispute the enforceability of—or indeed *even acknowledge*—the forum selection clause contained in LendingTree's Terms of Use. As detailed in LendingTree's Memorandum of Law in Support of its Motion to Transfer, *see* ECF No. 16-1 at 2, 4–5, by creating a LendingTree customer account and submitting a loan request form in December 2021, Plaintiff Kevin Ra expressly assented to LendingTree's Terms of Use, which both (a) provides that any disputes arising out of or related to this Agreement or the Websites, Services, or Content, are to be governed by the laws of the State of North Carolina, and (b) states that "if any matter proceeds in court, including post-arbitration confirmation proceedings," a user "agree[s ]to the exclusive personal jurisdiction by, and venue in, the state and federal courts located in Mecklenburg County, North Carolina, and waive[s] any objection to such jurisdiction or venue." Gleason Decl., Exh. C at 5 (unnecessary capitalization deleted).

The Supreme Court has stressed that a forum selection clause should be "given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. Of Tex.*, 571 U.S. 49, 59–60 (2013) (internal quotation marks and citation omitted). As LendingTree has noted, under binding Supreme Court and Sixth Circuit precedent, the forum selection clause contained in the Terms of Use is plainly applicable, mandatory, valid, and enforceable. *See* ECF No. 16-1 at 8–13; *Lakeside Surfaces, Inc. v. Cambria Co., LLC*, 16 F.4th 209, 215 (6th Cir. 2021) (explaining that a court must ascertain "whether a forum-selection clause

is applicable to the claims at issue, mandatory, valid, and enforceable”). In their opposition, Plaintiffs do not dispute the validity of the forum selection clause on contractual grounds, thus forfeiting a challenge to its enforceability. *See Cliffs Nat. Res., Inc. v. Seneca Coal Res., LLC.*, No. 1:16CV3034, 2017 WL 1963445, at *3 (N.D. Ohio May 12, 2017) (“[Plaintiff] does not challenge the validity of the forum selection clause on traditional contract enforceability grounds. It does not allege the forum selection clause is invalid due to duress, fraud or any other invalidity argument. Thus, the clause itself is valid.”); *see also Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009) (“The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced.”). Nor have Plaintiffs contended that the Clause is unenforceable under any of the other factors articulated by the Sixth Circuit in *Lakeside Surfaces*. *See* 16 F.4th at 219–20 (explaining that, in determining whether a mandatory forum selection clause is valid and enforceable, courts assess whether “(1) the clause was obtained by fraud, duress, or other unconscionable means; (2) the designated forum would ineffectively or unfairly handle the suit; (3) the designated forum would be so seriously inconvenient that requiring the plaintiff to bring suit there would be unjust; or (4) enforcing the forum selection clause would contravene a strong public policy of the forum state”). As such, there is no dispute that mandatory forum selection clause contained in LendingTree’s Terms of Use is valid and enforceable.

Moreover, Plaintiffs do not—and indeed cannot—dispute that each of their claims arise out of and relate to their use of LendingTree’s websites, content, or services and thus fall within the broad scope of the forum selection clause. Indeed, by extensively documenting Plaintiff Ra’s use of LendingTree’s content and services, the email correspondence in Exhibit A evidences the applicability of the clause and its venue and waiver provisions to each of Plaintiffs’ claims. *See generally* ECF No. 27, Exh. A. This Court must therefore uphold the forum selection clause

pursuant to which the agreed and exclusive venue for this action is in North Carolina, not this District.

**2. Plaintiffs cite no legal authority for the proposition that a threat to pursue litigation has any bearing upon the parties' preselected venue pursuant to a mandatory, valid, and enforceable forum selection clause.**

With respect to Plaintiff Ra's February 1, 2023, email[5] to LendingTree threatening legal action, Plaintiffs cite no legal authority for the (meritless) proposition that a mere threat to pursue

[5] Although Plaintiffs only reference the February 1, 2023, email in their opposition brief, none of the other correspondence that they append in Exhibit A is (a) relevant to LendingTree's Motion to Transfer Venue or (b) could support a plausible entitlement to relief under any of their federal or state-law causes of action. Indeed, the overwhelming majority of the emails merely chronicle, in largely perfunctory fashion, Plaintiff Ra's loan applications—namely, his submission of bank statements to various LendingTree representatives (and his intermittent frustrations with the application process more generally). *See, e.g.*, ECF No. 27 at 10–11, 13–18. And the few emails in Exhibit A that are even remotely relevant to Plaintiffs' claims—although not referenced in their opposition brief—do not support the imposition of direct or vicarious liability against LendingTree for any of the allegedly unsolicited telemarketing calls at issue. Three email exchanges are worth briefly addressing here.

First, in an email exchange from October 2022, in response to Plaintiff Ra's request that SnapCap not "sell our info to any other company," representative Sara Heath confirms that she "will be the only one reaching out to [him]." *Id.* at 9.

Second, in an email to LendingTree of March 20, 2023, Plaintiff Ra more explicitly threatens legal action against LendingTree for allegedly sharing his contact information with its marketing affiliates, contending that "[t]hese 'partners' who LendingTree has chosen to share information with are well-known sheisters [sic] and fraudsters," and that many such entities, including "Omega Capital" "have countless . . . complaints against them," and are involved in pending litigation. *Id.*, Exh. A at 34. In this note, Plaintiff Ra further (a) represents that he receives "NO LESS than ten calls/emails PER DAY from these [entities]," (b) claims that "[n]o matter how many times I opt out, I get more calls," and (c) asserts that "LendingTree has CLEARLY done a very poor job of vetting who information is shared with." *Id.* He also encloses a link to shared folder purportedly containing information that he has "gathered so far" concerning various services that the third-party callers supposedly use, including Docusign and Hellosign—firms which, Plaintiff warned, "can easily be subpoenaed." *Id.*

And third, in an (undated) email from Plaintiff Ra to SnapCap—which was clearly a follow-up to his February 1, 2023, email discussed *supra*—Plaintiff Ra notes that "his request for the agreement" that he sought "has gone unanswered," and warns that "[t]his the [sic] LAST AMICABLE request before we go to Federal Court." ECF No. 27, Exh. A, at 19. Plaintiff Ra further represents that he "continue[s] to receive 10–15 calls A DAY from companies you sold our info to." *Id.*

With respect to Plaintiff Ra's requests that he no longer receive communications from third parties, none of these emails suffice to allege either direct or vicarious liability on LendingTree's part for any third party's TCPA violations, or support an entitlement to relief under any asserted state-law cause of action. *See* ECF No. 14 at 11–24. *Au contraire*, the correspondence demonstrates (a) that Plaintiff Ra was aware that LendingTree itself did not initiate any of the offending calls, thereby precluding direct liability, *see id.* at 9, and (b) that LendingTree lacked control over—and indeed knowledge of—any of the alleged calls from third-party telemarketers, thus obviating vicarious liability under any applicable theory, *see* ECF No. 14 at 13–16.

Moreover, LendingTree's Terms of Use explicitly notes that if a user wishes to no longer receive communications from a "Provider," the user is to "notify [the] particular Provider directly," Gleason Decl., Exh. C at 6. The Terms of Use further disclaim LendingTree's "responsib[ility] for a Provider's failure to follow" a user's (or LendingTree's) instructions to that effect. *Id.* Crucially, Plaintiffs have forfeited any argument as to the enforceability of the Terms of Use by failing to both (a) contest the application of the agreement in opposing LendingTree's Motion to Transfer Venue, *see generally* ECF No. 27 at 1–3, and (b) oppose LendingTree's Motion to Compel Arbitration.

litigation—nearly a year before a suit is filed—has any bearing whatsoever upon the parties' agreed and exclusive venue for this dispute pursuant to a mandatory, valid, and enforceable forum selection clause, or that LendingTree's alleged "failure to respond in any meaningful way" to Plaintiffs' demands could somehow "operat[e] as a waiver," ECF No. 27 at 2. *Cf. Mahan v. Core Values Roadside Service, LLC*, 2020 WL 1291589, at *3 (S.D. Ohio Mar. 18, 2020) (finding on motion to transfer venue that a forum-selection clause was enforceable where, *inter alia*, the plaintiffs cited no legal authority to support their contention that the agreement terminated when they stopped taking referrals); *see also id.* ("'A Court only considers legal arguments supported by citation to legal authority.'" (citation omitted)); *United States SEC v. Sierra Brokerage Servs.*, 608 F. Supp. 2d 923, 952 n.29 ("[C]onclusory and undeveloped arguments made without citation to legal authority, such as this one, are waived." (citing *Gen Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 438, 441 (6th Cir. 2002))). On the contrary, in agreeing to the Terms of Use, *Plaintiffs* affirmatively agreed to "*waive any objection to*" the "*exclusive* personal jurisdiction by, and *venue in*, the state and federal courts located in Mecklenburg County, North Carolina," Gleason Decl., Exh. C at 5 (emphasis added; capitalization deleted)—Plaintiffs' protestations notwithstanding.

In their sole case citation in support of their waiver argument, Plaintiffs aver that "[a] party may waive venue objections by failing to assert them timely or by taking inconsistent action." *Id.* (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). As applied here, this argument is obviously meritless both legally and factually. To be sure, "a party attempting to rely 'on a forum selection clause may be found to have waived the enforceability of the clause if the party act[s] in

---

Finally, as discussed *infra* with respect to Plaintiff Ra's February 1, 2023, email to LendingTree, Plaintiffs two other missives threatening litigation, *see id.*, Exh. A at 19, 34, have no bearing upon the parties' preselected venue pursuant to a mandatory, valid, and enforceable forum selection clause.

a manner inconsistent with the clause.'" *PNC Bank, Nat'l Ass'n v. MAC Meetings & Events, LLC Cisco Sys., Inc.*, No. 4:18-CV-1967-SPM, 2020 WL 3578574, at *104 (E.D. Mo. July 1, 2020) (quoting 1 Bus. & Comm. Litigation in Fed. Courts, § 3:31 (4th Ed. 2019)); *see also Sadiant, Inc. v. Penstock Consulting, LLC*, No. 23 CIV. 7872 (KPF), 2024 WL 2847195, at *10 (S.D.N.Y. May 30, 2024) (explaining that "where a 'party invoking [a forum selection clause] has taken actions inconsistent with [the clause], or delayed its enforcement, and other parties would be prejudiced [by its enforcement],' a court may conclude that the invoking party has 'waived' enforcement of the forum selection clause," but that a "court will not . . . 'infer such a significant waiver absent a clear indication of intent through a party's actions'" (first quoting *Wachovia Bank Nat. Ass'n v. EnCap Golf Holdings, LLC*, 690 F. Supp. 2d 311, 328 (S.D.N.Y. 2010), then quoting *Ferraro Foods Inc. v. M/V Izzet Incekara*, No. 01 Civ. 2682 (RWS), 2001 WL 940562, at *4 (S.D.N.Y. Aug. 20, 2001)). Indeed, "'[c]ourts have found implied waiver of [a forum selection clause] where a party has repeatedly represented that [another] venue is appropriate or actively pursued substantive motions [in that venue],' but have declined to find waiver 'where [the] parties merely participated in pretrial motions [in an alternative venue].'" *Id.* (quoting *Wachovia Bank*, 690 F. Supp. at 328) (alterations adopted).

LendingTree has not engaged in any conduct either leading up to or during this action that is inconsistent with the forum selection clause, delayed its enforcement, or otherwise evinced any intent to abrogate its application. On the contrary, LendingTree moved at the *earliest possible opportunity* to enforce the clause as to Plaintiff's claims, filing its Motion to Transfer Venue concurrently with its Motion to Dismiss and Motion to Compel Arbitration. *See* ECF Nos. 14, 15, 16. Plaintiffs simply cannot show waiver on these facts. *Compare Gordon v. Gulf Stream Coach, Inc.*, No. 5:07CV3443, 2008 WL 3200257, at *2 (N.D. Ohio Aug. 5, 2008) (finding defendant

"waived its right to enforce the forum selection clause" where, after answering plaintiffs' complaint and raising numerous defenses, defendant "first raised the possibility of a forum selection clause" "near the end of [a case management] conference" held "more than four months" after removal and then, "[d]espite this acknowledgment," still waited nearly another month to seek transfer, and only after "[p]laintiffs amended their complaint"); *SES Env't Sols., LLC v. Napier*, No. 1:22-CV-80, 2022 WL 3226750, at *5 (S.D. Ohio Aug. 10, 2022) (holding that defendant's conduct in "expressly stat[ing] that he shall waive his right to demand enforcement the forum selection clause if th[e] Court were to dismiss the [case] to allow Plaintiff to refile elsewhere," and "moving the Court to transfer th[e] case to a venue not within the forum selection clause, constitutes 'taking actions completely inconsistent' with his contractual right to demand a particular forum and, thus, constitutes a waiver of such right" (citation omitted)).

The frivolity of Plaintiffs' contrary suggestion is evident when one considers that, even where litigation has been pending for months and a defendant, *unlike LendingTree*, initially *failed* to raise the issue of *forum non conveniens*, courts have *still* declined to find waiver of a right to enforce a forum selection clause. *See, e.g., Cliffs Nat. Res., Inc.*, 2017 WL 1963445, at *2, 4 (transferring case pursuant to forum selection clause; finding that defendant, which "wait[ed] approximately three months after Plaintiff filed its Complaint to raise a venue challenge," "did not waive its rights under the forum selection clause by first filing a Motion to Dismiss and an Answer or by acknowledging that th[e] Court had subject matter jurisdiction over the disputes"); *Minghong Inv., Inc. v. Felix Chac Chuo*, No. 2:21-CV-05979-SB-PD, 2022 WL 2189365, at *5 (C.D. Cal. Mar. 9, 2022) (rejecting plaintiff's argument that defendants "waived their right to enforce the forum-selection clause" when case had been pending for nearly eight months; the court had "issued a scheduling order less than four months" prior and ruled on one motion to dismiss; and "only

limited discovery ha[d] occurred"); *Robles v. Schneider Nat'l Carriers, Inc.*, No. EDCV 16-2482-JGB (KKx), 2017 WL 8232083, at *4 (C.D. Cal. Dec. 11, 2017) (no waiver of forum selection clause where the case had been pending for a year and the defendant had filed two prior motions to dismiss without raising *forum non conveniens*).

Simply put, LendingTree's participation in this proceeding does not amount to an "invocation of the litigation machinery" that could, in any way, support a finding of waiver. *See In re Hutcheson Med. Ctr., Inc.*, No. 14-42863-PWB, 2017 WL 4536076, at *15–16 (Bankr. N.D. Ga. Oct. 6, 2017) (rejecting plaintiff's argument that defendant, which concurrently filed its motions to dismiss and transfer venue, waived its right to invoke a forum selection clause by filing a jury trial demand and a "motion to withdraw the reference asking the District Court to preside over the case"; noting that "only 3 months elapsed between the filing of the complaint and [defendant's] motion to transfer venue," and "[n]o discovery has occurred").

**3. Plaintiffs' insistence that venue is proper in the Eastern District of Ohio under 28 U.S.C. § 1391(b)(2) is entirely irrelevant to LendingTree's § 1404(a) Motion.**

Plaintiffs' insistence that venue is proper in this District under 28 U.S.C. § 1391(b)(2) is entirely irrelevant to the disposition of LendingTree's Motion to Transfer. LendingTree's Motion is not based upon the assertion that the forum selection clause to which the parties expressly agreed renders venue in this District *per se* improper; "rather, a 1404(a) challenge seeks to transfer the case to the *contractually agreed upon forum*." *Cliffs Nat. Res., Inc.*, 2017 WL 1963445, at *4 ("Defendant's Motion to Transfer does not dispute that venue is proper in this Court, rather, a 1404(a) challenge seeks to transfer the case to the contractually agreed upon forum. . . . Thus, the waiver provisions of Fed. R. Civ. P. 12(h) do not apply." (citing *Atlantic Marine*, 571 U.S. at 59 ("a forum-selection clause does not render venue in a court 'wrong' or 'improper' under § 1406(a) or Rule 12(b)(3)")) (emphasis added). Plaintiffs expressly contracted to litigate any dispute in

North Carolina and "'courts should not unnecessarily disrupt the parties' settled expectations.'" *Rosskamm v. Amazon.com, Inc.*, 637 F. Supp. 3d 500, 513 (N.D. Ohio 2022) (quoting *Atlantic Marine*, 571 U.S. at 66).[6]

* * *

Plaintiffs affirmatively agreed to the exclusive venue in, and personal jurisdiction by, North Carolina federal and state courts when expressly assenting to the LendingTree's Terms of Use. The instant dispute plainly arises out of and relates to Plaintiffs' use of LendingTree's websites, content, or services, bringing each of their claims within the scope of that mandatory, valid, and enforceable forum selection clause. Accordingly, Plaintiffs have not met their burden of demonstrating that this is one of "the most exceptional cases" where it is appropriate to deviate from the Supreme Court's clear instruction that "a valid forum-selection clause . . . should be 'given controlling weight,'" *Atlantic Marine*, 571 U.S. at 63 (quoting *Stewart Org.*, 487 U.S. at 33 (Kennedy, J., concurring)). Transfer to the Western District of North Carolina is therefore proper.

## III. CONCLUSION

For the foregoing reasons, and those set forth in LendingTree's Memorandum in Support of its Motion to Transfer Venue, LendingTree respectfully requests that this Court enter an order transferring the above-entitled action to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a).

*[Signature on following page]*

[6] Plaintiffs also obliquely contend that their "choice of forum should be honored"; however, under *Atlantic Marine's* modified *forum-non-conveniens* analysis, which governs here, their choice of forum is accorded "no weight." *See Atlantic Marine*, 571 U.S. at 63 (plaintiff's "choice of forum merits no weight").

Dated: April 29, 2025

Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: *___/s/ Zach Adams___*
Zach Adams
Attorney for Defendant
LendingTree, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I served a copy of the foregoing pleading on all counsel for all parties, via the CM/ECF system and/or mailing same by United States Mail, properly addressed, and first class postage prepaid, to all counsel of record in this matter.

By: *___/s/ Zach Adams___*
Zach Adams